[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a Memorandum of Decision of an action brought seeking a dissolution of marriage and other relief. The action was filed on February 3, 1999, and had a return date of February 9, 1999. The complaint alleges that the parties were married on July 18, 1982 in Guilford, Connecticut. There is one minor child issue of the marriage whose name is Garrett Sullivan, born on November 27, 1983. Both parties are residents of the State of Connecticut. The marriage of the parties has broken down irretrievably. Those facts as stipulated to by the parties are found by the Court.
During the course of the marriage, both parties resided in Guilford, Connecticut. Each of the parties had been married one time prior to this marriage. The plaintiff did not have any minor children from her prior marriage, the defendant did have minor children.
The evidence indicated and the Court finds that at the time of this marriage the plaintiff was employed at the Southern New England Telephone Company. Shortly after the marriage, she left her employment which provided an annual salary to her of approximately $35,000. She has not worked since that time in any formal or substantial employment. Throughout the course of the marriage she had worked cleaning at the Guilford Funeral Home, the business owned by the defendant, for which she had been paid through an arrangement with the defendant. At the present time the plaintiff is employed cleaning houses and restoring furniture. She is self-employed and reports a relatively minimal income on her financial affidavit. She has a degree from the University of Minnesota with concentration in the field of child psychology. She has not been employed in that field since well prior to the date of her marriage. She has not held a job either in the field of child psychology, or any CT Page 12354 related field, or outside of the employ of her husband since February of 1983.
During the course of the marriage, the plaintiff took care of the one minor child issue of the marriage, and also a son of the defendants from his prior marriage. The defendant!s son came to live with the parties in 1984 or 1985 when he was approximately 10 years old. He lived with the parties until he left home to attend college. The plaintiff testified that she treated that child like her own, and enjoyed a very close relationship with him as well as with her own son. That testimony is unchallenged.
The plaintiff testified that she brought savings in the approximate amount of $30,000 into the marriage as well as a vehicle. She further testified that initially she was not used to asking for money and used up her own savings. After her savings were used up the defendant paid all of the obligations and bills of the parties.
The plaintiff further testified, and the defendant confirmed, that there were several properties purchased during the course of the marriage. There were two properties purchased in Vermont which are jointly held by the parties and there was a condominium purchased in Florida which is also jointly held by the parties.
Otherwise, the real estate listed on the defendant's financial affidavit was owned by him prior to the marriage. As to the real estate parcels known as 79 Church Street and 85 Church Street, both in Guilford, Connecticut, the parties built multifamily properties as investments on those parcels. The defendant contends that those properties were built with funds received from the sale of other real estate which he also owned prior to the date of the marriage of the parties.
The wife describes the marriage of the parties as being one of living without financial limitation. They were able to vacation, provide for their household, and pursue the activities that they pleased. The plaintiff traveled for ski vacations, frequently with her son. The parties frequently went to Vermont, primarily for skiing and for activities surrounding their son's schedule at the Killington Ski School. The defendant played golf, locally and at various travel destinations.
The plaintiff states that the defendant was ill tempered. She describes at times that her family life was like "walking on egg shells". She testified that this was due primarily to the defendant's unpredictable moods. The plaintiff described several situations where the defendant lost his temper upon which he left the house and/or left area so as to be by himself. The plaintiff indicates that this was stressful to both CT Page 12355 herself and the children, and that some of these incidents took place in public. She indicates that the volatility of the defendant's moods was intolerable to her. She also testifies that her husband occasionally drank to excess. The plaintiff alleges her husband was unfaithful to her a number of years ago, which the defendant denies. The plaintiff cites those factors as the cause of the breakup of the marriage.
The husband's testimony is in direct contrast to that of the wife's. He indicates that it was his belief that they had a very good marriage. He testifies as to having been completely surprised at the initiation of the divorce. His states his initial reaction upon being served with the divorce documents was that he desired to save his marriage. The husband states that he has paid for all of the expenses of the parties without reservation, that they have vacationed, traveled, and lived financially without limitation. He denies the allegations made by the plaintiff of his infidelity in the past, and also of this abusing alcohol. He does admit to the incidents which had to do with his temper.
There is credible evidence to support the defendant's allegation that the plaintiff has enjoyed a relationship with a Christopher Wells. and that the relationship started prior to the separation of the parties. The Court finds that relationship is a partial reason for the breakup of the marriage of the parties. The Court has considered "fault" in its decision as one of the factors enumerated in C.G.S. Sec. 46b-81 and 46b-82, noting that it is only one of a number of factors which the court is bound to consider. That consideration is not primary in light of the evidence presented in this case.
There was extensive testimony offered by both the parties and expert witnesses as to the assets of the parties. Specifically, there was testimony offered as to the value of the assets, the date of the acquisition of the assets, a distinction between pre and post marital assets, and the present financial status of each of the parties. In addition, there were claims for relief filed by the parties in written form, which claims were supplemented by the testimony of the parties and the argument of counsel. The Court has reviewed that evidence and the corresponding exhibits in detail. The Court has also reviewed and considered the statutory criteria with respect to the claims made by the parties.
The Court finds that the defendant was, at the time of the marriage, the owner of the real estate known as 180 Oxbow Lane, 115 Church Street, 79-81 Church Street, 85-87 Church Street, 91 Church Street, and 149 Church Street, all located within the Town of Guilford, Connecticut. In addition, at the time of the marriage the defendant was a partial owner of property located on Route 77 in Guilford, Connecticut. He also owned CT Page 12356 and operated the business known as the Guilford Funeral Home, again prior to the date of the marriage. The Court finds the plaintiff's values for these properties as stated in his Financial Affidavit and corroborated by his expert witnesses to be logical and credible. Aside from the real estate as mentioned, the defendant has presented a schedule of his premarital assets which is attached as part of his financial affidavit dated August 15, 2000. The Court finds that schedule accurately represents the non-real estate portions of the defendant's assets which he owned prior to the marriage in the amounts indicated. Essentially, the schedule consists of a number of bank accounts, some retirement accounts, the business as aforementioned, and interest in life insurance policies. Additionally, the defendant has provided partial copies of income tax returns from 1985, 1986, 1988, which are submitted as documentary evidence of his sale of real estate owned prior to the marriage which was sold for the purpose of construction/improvements on the buildings lots located at 79-81 Church Street, and 85-87 Church Street, Guilford, Connecticut. That evidence is uncontroverted.
As mentioned previously, the joint real property assets of the parties are the two properties in Vermont, and the condominium in Vero Beach, Florida. In addition, there are some investment accounts, retirement accounts and bank accounts which existed in smaller amounts at the time the parties were married, or were created during the time of the marriage. The value of the increase in those accounts and the value of the increase in the defendant's pre-marital real property are partially claimed by the plaintiff.
The defendant reports a gross monthly income of $16,744 from his principal employment at the Guilford Funeral Home. After deductions, his financial affidavit indicates that he receives $9,618 per month net. In addition, he reports a net rental income of $5,894 per month. That is derived from a gross monthly rental income from all properties which is $10,925. With the exception of the Vero Beach condominium, each of the properties lists deductions for insurance, heat, taxes and maintenance. The maintenance expense indicates that it is calculated from an amortization of painting, carpentry, and other repairs over a thirty-six month period in addition to yard work, appliances, etc. The maintenance costs appear to be overstated.
The defendant's financial affidavit does not include any income from investments and/or any other cash assets. Plaintiff's exhibits 1, 2, and 3 are the parties income tax returns from 1996, 1997, and 1998. Respectively, the adjusted gross income reported in each of those years was $208,164, $278,638, $328,530. In each of those years there was interest in dividend income in excess of $20,000 which is included in the adjusted gross income. The plaintiff did not generate any income in each CT Page 12357 of those years.
The plaintiff's financial affidavit shows a gross weekly income of $1,187. of that amount, $1,000 is alimony. After deductions for taxes, she lists a net weekly income of $812. Her expenses are shown as $1,246, which are in part overstated. She shows some funds in a checking account, a Knights of Columbus annuity with a value of $22,000, and an IRA with the New Haven Savings Bank in the amount $1,500. The defendant argues that the plaintiff has an earning capacity similar to that which she had at the time of the marriage. The Court finds that argument unconvincing.
Having accepted the stipulation of the parties as to the breakdown of the marriage, the Court hereby dissolves the marriage of the parties.
The Court orders that the wife's annuity from the Knights of Columbus as listed on her financial affidavit, her checking accounts, and the IRA as listed on her financial affidavit, be her property free and clear from any claim of the defendant. In addition, the Court allocates to the plaintiff the credit that was provided in the Order of the Court dated June 3, 1999 in the amount of $12,000. The Court orders that the jointly owned property of the parties known as Vista Plantation, Vero Beach, Florida, be conveyed by the defendant to the plaintiff. She shall exercise ownership of that property effective November 01, 2000 which shall include the right to collect rents and the obligations to pay taxes and other expenses as of that date. The defendant shall be responsible for the expenses of that property prior to the operative date of the transfer, including but not limited to taxes and common charges. The plaintiff shall have such items of personal property as are contained in that condominium, unless the parties had previously agreed otherwise. The plaintiff shall be the sole owner of that property, free and clear from any claim of the defendant. The Court orders that the property known as Village Lane, in Brownsville, Vermont, be conveyed by the defendant to the plaintiff. Said property is to become the exclusive property of the plaintiff free from any claim of the defendant. The personal property located in that home is addressed subsequently in this judgment. The defendant shall pay the costs of the of the. conveyances of these properties.
The defendant is ordered to convey, by means of a Qualified Domestics Relations Order, the sum of $275,000 from the Guilford Funeral Home Money Purchase Plan and Trust. The defendant shall bear the cost of the preparation, filing, and effecting of the Qualified Domestic Relations Order. The defendant shall convey to the plaintiff the sum of $65,000 from the New Haven Savings Bank certificate of deposit shown on his financial affidavit. The defendant shall further convey to the plaintiff CT Page 12358 the sum of $35,000 from the cash value of the life insurance policies he presently has in effect. The defendant may convey that sum from such policies as he may choose. The defendant shall convey to the plaintiff the sum of $45,000 from the Gruntal Co. financial account. The defendant shall convey to the plaintiff the sum of $49,392 representing the Provident Mutual Annuity account, or whatever the full balance of that account is in excess of the aforementioned sum.
The defendant shall pay to the plaintiff alimony in the weekly sum of $1,162.80 (or $5,000 per month) effective upon the date of this judgment. Said alimony shall terminate ninety (90) months from the date of this judgment, or upon the death, remarriage, or cohabitation of the plaintiff as defined by the Connecticut General Statutes, whichever shall first occur. Alimony shall not be modified as to term.
The parties shall share joint legal custody of the minor child. The primary residence of the child shall be with the plaintiff subject to liberal and reasonable visitation with the defendant. The defendant shall pay the sum of $369 per week as child support for the minor child. In addition, the defendant shall pay any and all expenses associated with the child's attendance at the Killington Mountain Ski School. Those expenses shall include, but are not limited to, school tuition, room and board, summer camps, equipment, lift tickets, racing entry fees, and such other related costs. In addition, the defendant will maintain medical insurance for the benefit of the minor child until he graduates or reaches the age of twenty-four. He shall pay all unreimbursed and uninsured medical and dental expenses for such period on behalf of the minor child.
The defendant shall provide medical insurance benefits for the plaintiff under the provisions of COBRA for a period of thirty-six months. Those benefits shall be provided at husband's expense. The defendant shall maintain life insurance for the benefit of the plaintiff in the amount of $150,000. for so long as he has an obligation to pay alimony.
The defendant shall pay the sum of $15,000. as a contribution towards the plaintiff's attorney's fees. Any attorney's fees in excess of that amount, and any other fees and costs incurred by the plaintiff in this litigation shall be responsibility of the plaintiff. The defendant shall be responsible for his own fees and costs.
As to personal property, the plaintiff shall have the following items as listed on her personal property list as located in Brownsville, Vermont: dog bed, cranberry table lamp, four white chickens. In addition, the plaintiff shall have such items of personal property that CT Page 12359 were hers prior to the marriage of the parties, or that were hers as conveyed to her from her mother.
It is the understanding of the Court that the balance of the items shall be divided in accordance with the schedules that have been provided. The Court will retain jurisdiction for any items left in dispute.
Any property of any kind not specifically addressed or conveyed by the terms of this judgment shall be and remain the property of the defendant, free of any claim by the plaintiff.
Robaina, J.